120 So.2d 690

Genyth C. McKEE et al.

v.

**EXCHANGE INSURANCE ASSOCIA-
TION et al.**

**6 Div. 387.**

Supreme Court of Alabama.

May 19, 1960.

Bowers, Dixon, Dunn & McDowell, Bir-
mingham, for appellee Clark.

Herbert W. Peterson, T. M. Conway, Jr.,
Rives, Peterson, Pettus & Conway, Bir-
mingham, for appellee Employers Fire Ins.
Co.

Hogan, Callaway & Vance, Birmingham,
for appellants.

SIMPSON, Justice.

This appeal seeks to reveiw a declaratory judgment decree rendered by the Circuit Court of Jefferson County, in Equity, wherein it was ruled that there was no liability on an insurance policy claimed to have been issued to Walter P. Clark, who had been a salesman for Edmunds Motor Company.

Clark had been a salesman for Edmunds Motor Company in Birmingham and had purchased an automobile from said Motor Company under its demonstrator plan. He took out liability insurance with appellee, Employers Fire Insurance Company, under a master policy it had issued to the Motor Company and a certificate of participation was issued to Clark. In January or February, 1956, while the policy was in force, Clark had a wreck and his automobile was destroyed. He did not own a car thereafter, but used various other people's automobiles, including his mother's. On May 15, 1956, Clark had borrowed his mother's car and was using it for both business and pleasure and on that day collided with Mrs. McKee, appellant, and seriously injured her. The McKees filed actions against him on the law side of the Tenth Judicial Circuit Court. On trial of these cases, judgments were rendered for the McKees in the amount of $14,000.

After the suits were filed on the law side, Exchange Insurance Company and Employers filed a bill in equity for declaratory judgment to construe the liability, vel non, of the insurance companies to the McKees. As stated, only the liability of Employers is here under consideration. It is contended by appellants that liability insurance coverage resulted from two separate provisions of the policy issued to Clark by Employers Insurance Company.

The policy was of standard type. The first coverage provided that the company agreed:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * sustained by any person, caused by accident and arising out of the * * use of *the automobile*." [Emphasis added.]

The so-called Temporary Substitute clause appears under Insuring Agreement IV(a) which provided that under this coverage the word "automobile" meant not

only the described automobile but also included:

"* * * an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * * *"

The "Use of Other Automobiles" clause of Employers' policy (Insuring Agreement V) provides as follows:

"If the named insured is an individual * * * and if during the policy period such named insured * * owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, C–1 and E, with respect to said automobile applies with respect to any other automobile, subject to the following provisions: * * *"

Among the sub-paragraphs appearing under such Insuring Agreement is the following:

"This insuring agreement does not apply:

"(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household * * *."

The question of whether Clark was "a member of the same household" as his mother, whose car he was using at the time of the accident, was submitted to the jury. The jury found that he was.

The court declared in its decree that the status of Clark was not covered by either of the provisions set forth above.

■ It is almost trite to re-enunciate the long established principle, that insurance contracts must be construed most strongly against the insurer. 12 Ala.Digest, Insurance, ☞146(3)

The policy of insurance issued to Clark in this case affords coverage to the "described automobile." It in addition, however, provides additional coverage in the so-called "temporary substitute" clause set forth above. This provision occupies a position of prominence equal to that of the paragraph affording coverage to the described automobile. It is entirely separate from the "use of other automobiles" provision to which the household exclusion applies.

The general meaning of the "temporary substitute" clause was stated in Iowa Mutual Insurance Company v. Addy, 132 Colo. 202, 206, 286 P.2d 622, 624, as follows:

"This provision of the policy makes it clear that a temporary substitute automobile is one used by the assured temporarily when the automobile which is insured under the policy is withdrawn from its customary use because of its breakdown, repair, servicing, loss or destruction."

In the instant case the insured's (described) automobile had been wrecked and destroyed. Our problem is to determine whether the status of Clark at the time of the accident falls within the foregoing "temporary substitute" provision of the policy. The first requirement is that the automobile must be "not owned by the named insured or his spouse if a resident of the same household". The car here was owned by the insured's mother. This test is then met.

Was the car being "temporarily used" by the insured. The record indicates that after the destruction of the described automobile and before the accident, the insured used various cars owned by his employer and had used his mother's four or five times. On the day of the accident he was using his mother's. The question is whether that use was "temporary". In Fleckenstein v. Citizens' Mutual Automobile Insurance Company, 326 Mich. 591, 40 N.W.2d 733, 736, the meaning of this requirement was considered in connection with the insured's use of a substitute vehicle continuously over a

period of four months prior to the accident. The court there stated:

"* * * In construing the expression 'temporary use' as employed in defendant's insurance policy, the meaning most favorable to plaintiff must be accepted. Pastucha v. Roth, 290 Mich. 1, 287 N.W. 355. As commonly accepted 'temporary' is an antonym of 'permanent'. Plaintiff's use of the Chevrolet was either temporary or permanent. The record would not justify conclusion as a matter of law that plaintiff's use or his intended use of the Chevrolet was permanent."

In this case the insured was using his mother's car for the day only at the time of the accident. We think this is clearly a temporary use. We think it clear that the use of his mother's car by the insured was due to the fact that his own automobile had been destroyed. He was using her car for the same purposes that he used his own before its destruction, i. e. for both business and personal purposes. Clearly it was used as a substitute for the described automobile.

The final requirement set out in the "temporary substitute" clause is that the described automobile must be "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction". It is undisputed in the record that Clark's automobile was withdrawn from all use by its total destruction.

Apparently, the court below took the position that since the described automobile was no longer owned by Clark after its destruction there could be no substitution for such car. With this position we cannot agree.

Th trial court cited Munson v. Speck, 1957, 76 S.D. 599, 83 N.W.2d 479, 480 as authority for its conclusion. In that case the insured testified that he had abandoned the car (the described automobile) because he owed so much on it and couldn't pay for it. The court there said "it is clear that there was no 'loss or destruction' of this automobile within the meaning of the quoted provision of the policy." The insured had sent the car back, not because of its breakdown or destruction, but because he could not pay for it.

That is not the case here. This case is very similar to Freeport Motor Casualty Company v. Tharp, et al., 338 Ill.App. 593, 88 N.E.2d 499, 500, where the insured claimed coverage in connection with an accident which he had while driving an automobile belonging to his brother-in-law. It appeared from the evidence that prior to the accident in question the insured had sold his automobile described in the policy as junk because it had gotten to the state where it would not run. The substitution clause in the policy there was substantially the same as the one in this case. The issue involved was stated by the court as follows:

"The question for determination is whether the failure of the insured to own an automobile at the time of the accident made the coverage referred to under the policy inapplicable when the insured was thereafter driving another automobile."

In that case the court held, correctly we think, that the insured was covered while driving his brother-in-law's car at the time of the accident. It stated:

"Nothing, either expressly or by implication, requires that the ownership of the particular automobile described in other portions of the policy be retained by the insured. The policy was to cover a one-year-term and was designed to cover the insured during that period of time, even if his automobile was withdrawn from normal use by reason of breakdown. It must be conceded at the very least that the automobile which the insured sold for junk was withdrawn from normal use by reason of the breakdown and that the liability coverage under the terms of the policy was not terminated by any express provisions of the policy, nor by any act to the parties thereto, * * *. To conclude that the insured

was required to retain ownership of the automobile described in the policy before there would be any protection to the insured under its terms, we feel is not justified under the facts and the law."

Likewise, in the case at hand there was no express requirement that the insured must retain ownership of the described automobile. The policy period was to run for one year from November 5, 1955 to November 5, 1956. The policy provided coverage for automobiles other than the described automobile, when the described automobile had been withdrawn from normal use due to its breakdown, loss or destruction. That being the case, we are of the opinion that the status of Clark fell within the "temporary substitute clause" at the time of the accident and that he was covered under that clause at the time.

The learned trial court accepted a different construction, with which we are constrained to disagree.

Reversed and remanded.

GOODWYN, MERRILL and COLEMAN, JJ., concur.