243 So.2d 730

**SAFECO INSURANCE COMPANY OF AMERICA, a Corporation**

v.

**Irby C. JONES.**

**4 Div. 16.**

Court of Civil Appeals of Alabama.

May 13, 1970.

Rehearing Denied June 3, 1970.

Affirmed on Mandate Jan. 5, 1971.

Powell & Sikes, Andalusia, Huie, Fernambucq & Stewart, and Paul G. Smith, Birmingham, for appellant.

Tipler, Fuller & Melton, Andalusia, for appellee.

**BRADLEY, Judge.**

Appellee was a passenger in an automobile operated by one Edward Miller when it was involved in a collision with an automobile operated by a driver who was uninsured. Appellee suffered severe injuries as a result of this accident.

Appellee subsequently recovered an uncontested judgment for $25,000 against the uninsured motorist in the Circuit Court of Covington County, Alabama.

Edward Miller, at the time of the accident, was insured with Bituminous Casualty Company (hereinafter referred to as Bituminous) under an automobile liability policy that included Uninsured Motorist coverage in the amounts of $10,000 per person and $20,000 per accident.

Bituminous paid appellee $10,000, which was the limit under its policy.

Appellee then made demand on his insurer, Safeco Insurance Company of America (hereinafter referred to as Safeco) for $10,000 under the Unisured Motorist endorsement of his liability policy. This request was denied.

An action was then filed against the insurer, Safeco, by the insured, Irby C. Jones, for $9,900.00.

A demurrer to the complaint was overruled, and issue was joined by the filing of a plea and answer.

The case was submitted to the trial court on the pleadings and a Stipulation of Facts, which included a demand for $10,000 against Safeco.

The trial court rendered a judgment for the plaintiff below, Irby C. Jones, and against the defendant below, Safeco Insurance Co. of America, in the amount of $10,000. From said judgment, an appeal was perfected to this court.

The question that was presented to the trial court, as it was set out in the Stipulation of Facts, was whether Irby C. Jones, under the terms of the policies issued by Bituminous and Safeco would be entitled to receive an additional $10,000 from Safeco.

That appears to be the question before this court.

Appellant made three assignments of error, but argued mainly his third assignment of error, which will be decisive of this appeal.

The third assignment of error questioned the validity of the judgment rendered for appellee on the basis that as a matter of law it was wrong.

The issue before this court is the interpretation we will place on the "Other Insurance" clauses of the insurance policies issued by Bituminous and Safeco.

The "Other Insurance" clauses contained in the Bituminous and Safeco policies are the same, and are as follows:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Uninsured Motorists shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The effect of these two clauses in the policies in question, as contended by appellant, is to limit recovery by appellee to $10,000 from Bituminous.

This conclusion is reached because of the following language contained in each "Other Insurance" clause: " * * * this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance," and

of course, the applicable limits in each policy for one person injured in an accident is $10,000. Bituminous, under the policy provisions contained in its policy, being the primary insurer, had paid appellee the maximum under the policy for one person, i. e., $10,000.00.

Safeco, in defense to appellee's action against it, said inasmuch as Bituminous, the primary insurer, had paid the maximum amount of $10,000 under its policy, it was not liable for any amount because of the above cited provision in the "Other Insurance" clause of its policy.

We believe that it would be readily conceded that were it not for the "Other Insurance" clause in the Safeco policy, appellee would be entitled to receive an additional $10,000 because his damages were $25,000, and the Uninsured Motorist section of Safeco's liability policy promised, "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * *."

The first question to be answered by us is whether or not it can be said that the "Other Insurance" clauses as set out in each policy are repugnant to each other and therefore void.

This question was presented to the Supreme Court of Oregon in the Case of Lamb-Weston v. Oregon Automobile Insurance Company, 219 Or. 110, 341 P.2d 110, 346 P.2d 643, and it said:

"In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto."

The Supreme Court of Oregon then held both insurance clauses void and required a pro ration of the loss within the limits of the policies.

However, this same question was presented to the Alabama Supreme Court in the case of State Farm Mutual Automobile Ins. Co. v. De La Cruz, 283 Ala. 167, 214 So.2d 909. The Court said:

"In the present case, we hold that the language in the policy is clear and unambiguous, and means that if the insured can recover under any other insurance policy, the present policy would only provide excess coverage in the amount by which the applicable limit of liability of the present policy exceeds the applicable limits of all other such insurance. In the present case, the applicable limits of the appellant's policy and the Allstate policy, under which the plaintiff recovered, are the same. Therefore, this provision precludes the plaintiff from recovering under the appellant's policy. This view has been adopted in other jurisdictions. * * *"

In the cited case, however, the Supreme Court pointed out that Title 36, Section 74(62a), Code of Alabama 1940, as Recompiled 1958, and as amended, had not been enacted at the time of the accident or the purchase of the insurance, and that the case was being decided without reference to the statute just mentioned.

The Supreme Court also noted that certain jurisdictions had allowed an insured to recover in a situation similar to that presented by the cited case, but that the policy provisions upheld in the case at bar were held void in the cited cases as being violative of a statute requiring Uninsured Motorist coverage. See Bryant v. State Farm Mut. Auto Ins. Co., 205 Va. 897, 140 S.E.2d 817; Sellers v. United States Fidelity and Guaranty Co., Fla., 185 So.2d 689; Childers v. Southern Farm Bureau Casualty Ins. Co., D.C., 282 F.Supp. 866; and Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A.2d 112.

Alabama's Uninsured Motorist statute was enacted in 1965, and is found in Title 36, Section 74(62a), Code of Alabama 1940, as Recompiled 1958, and as amended, and provides as follows:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 74(46) of this title, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

Since the Alabama Supreme Court has said, in De La Cruz, supra, that the "Other Insurance" clauses in the policies in question are "clear and unambiguous" and not in conflict with each other, we are faced with deciding whether or not these clauses are repugnant to our Uninsured Motorist statute, i. e., Title 36, Section 74(62a), supra, and therefore void.

We think it would be helpful in understanding the problem presented to review the historical background of the Uninsured Motorist endorsement to liability policies and the legislative mandate that this coverage be made available to all motor vehicle liability policyholders.

Professor Alan I. Widiss in his recently published book entitled, "A Guide to Uninsured Motorist Coverage," states the history of this type insurance coverage as follows:

"The problem of financial irresponsibility dates from the advent of the mass-produced automobile—which brought driving within reach of many who nevertheless did not possess adequate resources to respond to damage claims for serious injuries caused by their negligence. Consequently, for the last forty years state governments have tried in various ways to alleviate or at least control this problem. Most of the legislation adopted was directed at inducing motorists to acquire insurance if they lacked the personal financial resources to satisfy damage claims. * * *

\* \* \* \* \* \*

"By 1937, it was clear that further refinements were needed to eliminate the hazard created by financially irresponsible motorists. As a consequence, first in New Hampshire and then elsewhere, legislatures began to require all motorists involved in accidents resulting in death, personal injury or property damage exceeding a specified amount to immediately provide proof of their financial responsibility to pay any claims arising from the accident up to the limits specified in the financial responsibility law of the state (as well as to report the circumstances of the accident). Although the application of these laws still awaits an accident, once there is a collision the driver must demonstrate financial responsibility if he is to retain his motoring privileges.

"This approach, known as a 'security-type' law, is a feature of almost all present financial responsibility legislation in the United States. * * *

\* \* \* \* \* \*

"The rigorous enforcement of the security-type legislation induced substantial majorities of the motorists in many states to acquire insurance, thereby markedly reducing the percentage of uninsured drivers. * * *

\* \* \* \* \* \*

"In 1957, New Hampshire became the first state to require insurance companies to include the uninsured motorist coverage in all liability policies issued or delivered by any insurer licensed in the state, upon any motor vehicle principally used or garaged in the state. As of the end of 1968, legislation in forty-six states requires that this coverage be included in all automobile liability insurance policies—and it has become an integral part of automobile insurance policies throughout the United States. * * *"

Then, the Honorable Winslow Drummond, in an article on "Uninsured Motorist Coverage" found in Volume 23, Number 2, Arkansas Law Review, p. 167, asked:

"What is the purpose of uninsured motorist coverage? It is to provide the insured, as defined, with coverage which will compensate him if he is injured by an uninsured tortfeasor-driver, to the same extent as if that tortfeasor had bodily injury liability insurance with limits at least equal to those required by the financial responsibility law of the state where the insured resides. And what is the purpose of the statutes which require that uninsured motorist coverage be incorporated in automobile insurance policies? It is precisely the same.

"Thus, in the context of the State of Arkansas, an insurance carrier by contract and the State by statute have determined that the 'insured' shall have 10/20 bodily injury insurance coverage—no more, no less—available to him in the event the insured is injured by a tortfeasor. * * *"

Also, the following is found in Couch on Insurance 2d, Uninsured Motorist Clause, Section 45:623, p. 569:

"The purpose of the statute making uninsured motorist coverage compulsory, it has been said, is to give the same protection to a person injured by an uninsured motorist as he would have if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy."

And, the Supreme Court of South Carolina, in the case of Vernon v. Harleysville Mutual Casualty Co., 244 S.C. 152, 135 S. E.2d 841, said:

"* * * The Uninsured Motorist Act came into being by legislative enactment as a result of public concern over the increasingly important problem arising from injuries and damage inflicted by motorists who are uninsured and financially irresponsible. Its purpose was to provide financial recompense to innocent persons who receive bodily injury, property damage and to the dependents of those who lose their lives through the wrongful conduct of uninsured motorists. * * *"

What did the Legislature intend to be accomplished by the enactment of Section 74(62a), supra?

The answer, we think, is simple. The Legislature intended to provide uninsured motorist coverage for liability policyholders in the amount of $10,000 per person and $20,000 per accident, which is the identical minimum limits required of liability policyholders by Title 36, Section 74(46) (c), Code of Alabama 1940, as Recompiled 1958, as amended—our Safety Responsibility Law.

As we further view the intent of the Legislature, it was to assure a liability policyholder who was involved in an accident with a motorist who did not have liability insurance that he could recover for his damages up to the limits of his policy, the same as if the motorist causing the damages had been insured within the limits required by the Safety Responsibility Law—no more, no less. It was to fill the gap caused by the financially irresponsible motor vehicle operator. It was not thought of as a device to enable the injured motorist to collect more than he could have collected had the negligent driver been insured within the limits provided by Section 74(46) (c), supra.

As was stated by the Supreme Court of New Hampshire in Maryland Casualty Co. v. Howe, 106 N.H. 422, 213 A.2d 420:

"The design and purpose of the uninsured motorist insurance statute was to provide protection only up to the minimum statutory limits for bodily injuries caused by financially irresponsible motorists. The statute was not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing minimum statutory limits. * * *"

The two leading cases cited by appellee holding that the Uninsured Motorist statute of their respective states voided the "Other Insurance" clauses in Uninsured Motorist policies are Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817 and Sellers v. United States Fidelity and Guaranty Co., Fla., 185 So.2d 689.

In the *Bryant* case, supra, the Supreme Court of Appeals of Virginia took the position that the Uninsured Motorist statute of that State undertook to assure each liability policyholder with Uninsured Motorist coverage the right to collect " 'all sums' he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle within the limits of the policy." The court said there was no limitation in the statute on this right of recovery, and any policy provisions attempting to so limit the effect of the statute were void.

An example of what the court held would be helpful to a proper understanding of the decision:

X is a passenger in Y's vehicle which is involved in an accident with W. W is adjudged liable for the accident. X recovers a $30,000 judgment against W. W is uninsured.

Y has Uninsured Motorist coverage with limits of $10,000/$20,000 in Z Company. Z Company pays to X the full $10,000, being the full amount for one person injured in one accident under Z's policy.

X is still $20,000 short in recovering his judgment of $30,000.

X then makes demand on his Uninsured Motorist carrier for the full $10,000 under a policy he has with T Company. T Company denies the claim on the basis of the "Other Insurance" clause in its policy.

The case goes to court.

The Virginia Court says X can recover under his policy because the purpose of the statute is to permit X to recover all sums he is legally entitled to receive from the uninsured motorist up to the limits of the policy. The statute requires minimum limits of $10,000/$20,000. So, also, does the policy in question.

Query: Had the so-called uninsured motorist been insured at the minimum limits required by the statute, X could have recovered only $10,000.

But, since the motorist was uninsured, there are available to satisfy X's $30,000 judgment, two policies with $10,000 limits each, to be applied to X's judgment, except for the "Other Insurance" clauses in the respective policies.

The Virginia Court held that the statute could not be limited by the "Other Insurance" provision in the policy because the public policy of the State of Virginia was to extend to an insured motorist the right to recover "all sums" which he is entitled to recover from an uninsured motorist.

To like effect is the holding in the *Sellers* case, supra.

We do not subscribe to such a construction of our Uninsured Motorist statute.

In the first place, the Alabama statute does not contain the language that is set out in the Virginia statute (although the Florida statute is the same as ours); and, second, the Virginia Court has placed a construction on its Uninsured Motorist statute that permits a person to collect more money as damages caused by an Uninsured Motorist than would have been collectible had the damages been caused by a person insured within the legal limits of a liability policy.

It is our belief that the Uninsured Motorist endorsement on the policies in question and the statute enacted in support thereof was for the purpose of assuring to a person injured by an uninsured motorist the same recovery of damages as he could have recovered had that motorist been insured by a liability policy with limits the same as those required by Section 74(46) (c), supra. We do not believe that the Legislature intended to give any more, nor any less, and neither do we believe that insurers intended to do more or less, particularly with the construction that was placed on the "Other Insurance" clauses by the Alabama Supreme Court in *De La Cruz,* supra.

Granted, under this construction, the insured cannot recover all of his $25,000 judgment, but we feel that this is a matter that should be presented to the Legislature of this State, rather than to this court.

The trial court having erred in awarding judgment in favor of appellee-plaintiff, this case is reversed and rendered.

Reversed and rendered.

PER CURIAM:

Affirmed on authority of Ex parte Jones, Supreme Court of Alabama, 286 Ala. 606, 243 So.2d 736.