472 So.2d 856 (1985)
NATIONAL INDEMNITY COMPANY, Appellant,
v.
RYDER TRUCK RENTAL, INC., Appellee.
No. 84-1238.
District Court of Appeal of Florida, Third District.
July 16, 1985.
*857 Gary E. Garbis, Miami, for appellant.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Michael A. Mullen, Miami, for appellee.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
HENDRY, Judge.
Appellant, National Indemnity Company (National) appeals a final judgment in favor of Ryder Truck Rental, Inc. (Ryder) determining insurance coverage.
The facts giving rise to this appeal are as follows. In February, 1981 Charles Clark was struck by a truck driven by Leroy Floyd. At the time of the accident Mr. Floyd was working for East Coast Fisheries, Inc. (Fisheries) and the truck had been rented from Ryder by Fisheries.
Mr. Clark sued Mr. Floyd and Ryder for personal injuries sustained. Ryder cross-claimed for indemnification and contribution against Fisheries. The basis for this cross-claim was that the lease agreement between Fisheries and Ryder provided that Fisheries would indemnify Ryder for those damages caused by Fisheries' negligence, in excess of Ryder's $10,000 financial responsibility. Ryder also brought a second cross-claim against Fisheries' insurer, National. The ground for this second cross-claim was that if Fisheries was found liable to Ryder, then National was legally obligated, on behalf of its insured, for those damages in excess of Ryder's financial responsibility, up to National's coverage limits, since the truck was a "temporary substitute automobile" under Fisheries' policy with National.
A non-jury trial was held on the cross-claims. Testimony was offered that a 1967 Chevrolet truck owned by Fisheries was taken by Peter Swartz in May, 1980 relative to a business dispute. Fisheries expected to obtain the return of the truck, so it secured insurance coverage for the truck in June, 1980, from National. The insured truck was necessary to its business, so Fisheries rented replacement trucks from Ryder on a weekly basis from May, 1980 to February, 1981. These rented trucks performed the same duties the insured truck would have performed had it been in Fisheries' possession.
The trial court ruled Ryder was primarily liable for the first $10,000 in damages, pursuant to the lease agreement entered into between Fisheries and Ryder. National was held liable for damages in excess of $10,000, up to its coverage limits under its policy with Fisheries. Subsequently, National brought this appeal.
Two issues are raised on appeal: one, whether the rental truck was a "temporary substitute automobile" and, as such, afforded coverage under the National policy; and two, whether Fisheries is subject to an exclusion from coverage under its National policy by virtue of the liability Fisheries assumed in its lease agreement with Ryder.
We will consider the temporary substitute vehicle issue first. In determining whether the rental truck was a temporary substitute vehicle for the insured truck, we must first look to the language of the policy. National's policy provides coverage for a temporary substitute vehicle, providing such vehicle is:
[N]ot owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an *858 owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction.
National contends that Fisheries' repeated use of rental vehicles over an eight or nine month period does not constitute a temporary use, but instead, an indefinite one. We disagree with this contention.
The duration of the substitute vehicle's use is not controlling in determining whether the use is temporary. 12 G. Couch, Cyclopedia of Insurance Law § 45:231 at 527 (Rev. 2d ed. 1981). Whether a substitute automobile is used temporarily is a matter of intent, the use being deemed temporary where it was intended not to be used permanently. 12 G. Couch, Cyclopedia of Insurance Law § 45:231 at 526.
This fact situation is similar to that in St. Paul Fire & Marine Insurance Co. v. Nyquist, 286 Minn. 157, 175 N.W.2d 494 (1970). In Nyquist, the insured used a car owned by his mother when his own insured vehicle was in need of repair. He drove his mother's car from November, 1966 to August, 1967. The court found the use to be temporary because the owner intended that it not be permanent. In this case, Ryder and Fisheries intended that Fisheries' use of the rental truck be temporary. In Fleckenstein v. Citizens' Mutual Automobile Insurance Co., 326 Mich. 591, 40 N.W.2d 733 (1950), the insured had been using a substitute vehicle for four months, until his insured car was repaired. The court held that such use fell within the meaning of the temporary substitute vehicle provision. The Supreme Court of California also construed the meaning of temporary under an insurance policy's substitute vehicle provision. In State Farm Mutual Automobile Insurance Co. v. Johnston, 9 Cal.3d 270, 107 Cal. Rptr. 149, 507 P.2d 1357 (1973), the insured purchased a car for his son's use and also secured insurance coverage for the car. The policy was purchased in March, 1967. The car became inoperable so the son purchased another car in January, 1968. In March, 1968, prior to the lapse of the policy, the son was involved in an accident with the second car. The court held that this second car was a temporary substitute automobile under the insured's policy. It stated:
The policy itself fixes no limit in time during which the temporary extended coverage is to be effective. "Temporary" is a word of much elasticity and considerable indefiniteness. (Eastman v. Piper, 68 Cal. App. 554, 229 P. 1002.) It has no fixed meaning in the sense that it designates any fixed period of time. (Fleckenstein v. Citizens' Mut. Automobile Ins. Co., 326 Mich. 591, 40 N.W.2d 733, 736.) As commonly accepted, "Temporary" is an antonym of "permanent." (McKee v. Exchange Insurance Association, 270 Ala. 518, 120 So.2d 690, 692 [1960]).
Id. at 1359.
The Florida case cited by National does not apply to the facts of the instant case. In Newbern Distributing Co. v. Canal Insurance Co., 124 So.2d 721 (Fla. 2d DCA 1960), a leased tractor was held not to be a temporary substitute vehicle. The rationale for such holding was that the rental tractor involved in the accident was not being used as a substitute for any reason specified in the temporary substitute provision of the policy. The evidence adduced at trial in this case established that the Ryder truck was being used as a substitute for one of the reasons stipulated in the policy: there had been a "loss" of the insured vehicle. The other cases cited by National construe an insurance provision dissimilar to the one at issue here, or concern an inapplicable fact situation. Since the rental truck in this case was intended to be, and was in fact being temporarily used as a substitute for the insured vehicle, and the rental truck was not owned by Fisheries and was used with the owner's permission, it can therefore be said that the truck was covered under the "temporary substitute automobile" provision of the National policy.
As to the second issue, National contends that the lease agreement between Ryder *859 and Fisheries creates an exclusion from coverage under the National policy. The agreement provides that Fisheries will indemnify Ryder for any negligence of Fisheries which results in damages in excess of Ryder's $10,000 financial responsibility. National argues that since its policy states that there is no coverage for liability assumed by the insured pursuant to contract, Fisheries is thereby excluded from coverage as it assumed liability under the lease agreement.[1] Again, we disagree.
The only liability Fisheries faces in this case arises from the negligence of its employee, for which Fisheries is liable pursuant to Florida case law, not pursuant to any contract or agreement. Ryder, as the owner of the vehicle, has a claim for indemnification against Fisheries for any negligence of Fisheries or its employees. A lessor has a right to be reimbursed by a lessee for the amount of damages he has been compelled to pay for injuries to a third person caused by the lessee's, or his employee's use of leased property. Fincher Motor Sales, Inc. v. Lakin, 156 So.2d 672 (Fla. 3d DCA 1963); Hutchins v. Frank E. Campbell, Inc., 123 So.2d 273 (Fla. 2d DCA 1960). Indemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other. Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977); see Insurance Co. of North America v. Avis Rent-A-Car System, Inc., 348 So.2d 1149 (Fla. 1977).
Fisheries' agreement with Ryder placed no additional liability upon Fisheries. The exclusion from coverage provision was meant to apply to additional liability assumed by the insured. National would have this court read the exclusion provision to cover all contracts and agreements regardless of whether or not additional liability is assumed by the insured. The general rule with regard to an ambiguous insurance provision is that it is to be construed most strictly and most strongly against the insurer, and in favor of the insured. Fireman's Fund Insurance Co. v. Boyd, 45 So.2d 499 (Fla. 1950); Travelers Indemnity Co. v. Kassner, 322 So.2d 80 (Fla. 3d DCA 1975), cert. denied, 333 So.2d 41 (Fla. 1976). We find, therefore, that the exclusion provision does not apply.
For the foregoing reasons, the final judgment of the trial court is affirmed.
Affirmed.
NOTES
[1] The National policy provides,

[e]xclusions: This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement.